UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO JENKINS, <br><br> Plaintiff, <br><br> vs. <br><br> VITAMIN SHOPPE, INC., ALEXANDER W. SMITH, DEBORAH M. DERBY, DAVID H. EDWAB, MELVIN L. KEATING, SHARON M. LEITE, GUILLERMO MARMOL, HIMANSHU H. SHAH, TIMOTHY J. THERIAULT, and SING WANG, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Antonio Jenkins ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Vitamin Shoppe, Inc. ("Vitamin Shoppe" or the "Company") and the members of Vitamin Shoppe's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Vitamin Shoppe will be acquired by Franchise Group, Inc. (formerly known as Liberty Tax, Inc.) ("Liberty Tax") and Valor Acquisition, LLC ("Merger Sub") (the "Proposed Transaction").

2.     On August 8, 2019, Vitamin Shoppe and Liberty Tax issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 7, 2019 (as amended on November 11, 2019, the "Merger Agreement") to sell Vitamin Shoppe to Liberty Tax.  Under the terms of the Merger Agreement, each Vitamin Shoppe stockholder will receive $6.50 in cash for each share of Vitamin Shoppe common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $208 million.

3.     On November 12, 2019, Vitamin Shoppe filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Vitamin Shoppe stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Securities, Inc. (together with its predecessor, Merrill Lynch, Pierce, Fenner & Smith Incorporated, "BofA Merrill Lynch"); (ii) the background of the go-shop process conducted in connection with the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     In short, unless remedied, Vitamin Shoppe's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its principal executive offices in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Vitamin Shoppe.

9. Defendant Vitamin Shoppe is a Delaware corporation, with its principal executive offices located at 300 Harmon Meadow Boulevard, Secaucus, New Jersey 07094. The Company is an omni-channel specialty retailer of vitamins, minerals, herbs, specialty supplements, sports nutrition and other health and wellness products. Vitamin Shoppe's common stock trades on the New York Stock Exchange under the ticker symbol "VSI."

10. Defendant Alexander W. Smith ("Smith") is Non-Executive Chairman of the Board and has been a director of the Company since April 2017.

11. Defendant Deborah M. Derby ("Derby") has been a director of the Company since December 2012.

12. Defendant David H. Edwab ("Edwab") has been a director of the Company since November 2005.

13. Defendant Melvin L. Keating ("Keating") has been a director of the Company since April 2018. Defendant Keating was appointed to the Board as a designee of Vintage Capital Management, LLC ("Vintage Capital") pursuant to a cooperation agreement the Board entered into with Vintage Capital dated April 20, 2018 (the "Vintage Cooperation Agreement").

14. Defendant Sharon M. Leite ("Leite") has been a director of the Company since August 2018.

15. Defendant Guillermo Marmol ("Marmol") has been a director of the Company since February 2016.

16. Defendant Himanshu H. Shah ("Shah") has been a director of the Company since April 2018. Defendant Shah is also the Founder, President and Chief Investment Officer of Shah Capital, the Company's largest stockholder owning approximately 17.6% of the Company's outstanding shares. Defendant Shah was appointed to the Board as a designee of Shah Capital pursuant to a cooperation agreement the Board entered into with Shah Capital dated April 20, 2018 (the "Shah Cooperation Agreement," and together with the Vintage Cooperation Agreement, the "Cooperation Agreements").

17. Defendant Timothy J. Theriault ("Theriault") has been a director of the Company since March 2016.

18. Defendant Sing Wang ("Wang") has been a director of the Company since April 2018. Defendant Wang was appointed to the Board as a designee of Shah Capital pursuant to the Shah Cooperation Agreement.

19.     Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20.     Liberty Tax is a Delaware corporation, with its principal executive offices located at 1716 Corporate Landing Parkway Virginia Beach, Virginia 23454.  Liberty Tax, through the operations of Liberty Tax Service and Buddy's Home Furnishings, its indirect subsidiaries, franchises and operates a system of tax preparation and rent-to-own stores.

21.     Merger Sub is a Delaware limited liability company and a wholly owned subsidiary of Parent.

22.     Vintage Capital is a value-oriented, operations-focused, private and public equity investor specializing in the defense, manufacturing and consumer sectors.  Certain affiliates of Vintage Capital are investors in Parent and its subsidiaries and certain Vintage Capital personnel are members of the board of directors of Parent.  Vintage Capital is also the Company's second largest stockholder, owning approximately 14.9% of the Company's outstanding shares.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

23.     Founded in 1977, Vitamin Shoppe through its subsidiaries, operates as an omni-channel specialty retailer and contract manufacturer of nutritional products in the United States and internationally.  The Company operates in two segments: Manufacturing and Retail.  The Company provides custom manufacturing and private labeling services for vitamin, mineral, and supplement products, as well as develops and markets its own branded products.  It offers vitamins, minerals, herbs, specialty supplements, sports nutrition products, and other health and wellness products of approximately 900 brands, such as The Vitamin Shoppe, BodyTech, True Athlete, Mytrition, plnt, ProBioCare, Next Step, and Betancourt Nutrition; and national brands, including

Optimum Nutrition, Cellucor, Garden of Life, Quest Nutrition, Solaray, Solgar, Megafood, and Nature's Way.  The Company sells its products through Vitamin Shoppe and Super Supplements retail stores, as well as through its vitaminshoppe.com website.  As of May 29, 2019, the Company operated approximately 750 company-operated retail stores under the Vitamin Shoppe and Super Supplements retail banners.

24. On May 8, 2019, Vitamin Shoppe announced its first quarter 2019 financial results, including gross profit of $94.8 million, up from $93.1 million reported in first quarter 2018.  The Company reported Adjusted EBITDA of $18.2 million, a 9.1% increase over the first quarter 2018, and operating income of $6.3 million compared to $3.8 million for the first quarter of 2018.  Defendant Leite commented on the quarter, stating:

> Our first quarter results were in line with our expectations and reflect continued progress on executing our reinvention plan and re-building our business.  During the quarter, we made significant progress across a number of initiatives to better position the Vitamin Shoppe in the second half of the year and beyond.  Importantly, we are encouraged by the progress we are making on our strategic initiatives, growing our private brands business, expanding into a wholesale model, improving our execution while reducing our costs.
>
> With our new leadership team in place, we are taking bold steps to meet our customers' needs and accelerating our strategic initiatives to realize our most attractive opportunities.  We remain focused on driving efficiencies through productivity and making disciplined investment decisions to drive growth.  While there is still more work to do, we remain confident that we have the right plans in place and are committed to advancing our strategy to regain top-line growth and grow profitability.  As we continue our turnaround efforts, we remain focused on delivering our full-year outlook . . . .

**The Proposed Transaction**

25. On August 8, 2019, Vitamin Shoppe and Liberty Tax issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> VIRGINIA BEACH, Va. & SECAUCUS, N.J.--Liberty Tax, Inc. (OTC PINK: TAXA) ("Liberty Tax"), the parent company of Liberty Tax Service and Buddy's Home Furnishings, and Vitamin Shoppe, Inc. (NYSE: VSI) ("The Vitamin Shoppe"), an omni-channel, specialty retailer of nutritional products, today

announced that they have entered into a definitive agreement under which Liberty Tax will acquire The Vitamin Shoppe in an all cash transaction valued at approximately $208 million. The Vitamin Shoppe shareholders will receive $6.50 per share, which represents a premium of 43% to its closing share price on August 7, 2019, and a premium of approximately 59% to the 30-day volume weighted average price for the period ended on August 7, 2019.

The transaction is expected to be completed in the fourth quarter of 2019, subject to approval by The Vitamin Shoppe's shareholders, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as well as other customary closing conditions.

Liberty Tax intends to finance the transaction with up to approximately $170 million in debt financing and a combination of available cash and/or through the issuance of common stock of Liberty Tax. In connection with the execution of the merger agreement, Liberty Tax entered into debt commitment letters with institutional lenders and an equity commitment letter with an affiliate of Vintage Capital Management, LLC.

Pat Cozza, an independent member of the Board of Directors of Liberty Tax, stated, "We have great confidence in the value of The Vitamin Shoppe, its ongoing strategic reinvention plan and the outstanding efforts of The Vitamin Shoppe leadership team and associates. We believe that The Vitamin Shoppe is an excellent fit for Liberty Tax's previously announced strategy to acquire franchise-centric businesses, and demonstrates the commitment of Liberty Tax, its board and management team to implement the previously announced strategic transformation of Liberty Tax."

Sharon Leite, CEO of The Vitamin Shoppe, stated, "Following a careful and disciplined assessment, the board of directors has concluded that the acquisition proposal from Liberty Tax maximizes value for our shareholders. The transaction also delivers long-term benefits to our associates, customers and business partners. It provides an immediate premium to our current shareholders and aligns The Vitamin Shoppe with a partner that shares our strategic vision to unlock the further potential of The Vitamin Shoppe as a leader in health and wellness. We are committed to transforming into an agile, customer-first organization that differentiates our brand through best-in-class quality, innovation and expertise across our products and services."

Under the direction of its board of directors, Liberty Tax intends to continue to evaluate the acquisition of franchise-oriented or complementary businesses, including businesses that are not presently subject to franchising arrangements but that have the potential to be franchised in the future. The Vitamin Shoppe transaction represents the continued evolution of the business model of Liberty Tax, and follows the recent acquisition of Buddy's Home Furnishings, which was completed in July 2019. In recognition of this new strategic focus, Liberty Tax

previously announced its intention to change its name to Franchise Group, Inc. Liberty Tax anticipates that its name change will become effective in the third or fourth quarter of 2019.

**Insiders' Interests in the Proposed Transaction**

26.     Vitamin Shoppe insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Vitamin Shoppe.

27.     Notably, Vitamin Shoppe insiders stand to reap substantial financial benefits for securing the deal with Liberty Tax.  Pursuant to the Merger Agreement, all outstanding options, restricted stock units ("RSU"), performance-based restricted stock units ("PSU"), and restricted stock awards ("RSA") will vest and convert into the right to receive cash payments.  The following table summarizes the value of the Company options, RSUs, PSUs, and RSAs Company insiders stand to receive:

| Name | Options (#) | RSUs (#) | PSUs (#) | RSAs (#) | Amount ($) |
|---|---|---|---|---|---|
| **Named Executive Officers** | | | | | |
| Sharon Leite | — | — | 168,150 | 47,445 | 1,401,368 |
| Billy Wafford[1] | — | — | — | — | — |
| David Mock[2] | 141,777 | 31,250 | 47,855 | 18,978 | 899,827 |
| David M. Kastin | 8,012[7] | — | 36,101 | 29,368 | 425,549 |
| Colin Watts[3] | — | — | — | — | — |
| Brenda Galgano[4] | — | — | — | — | — |
| Charles D. Knight[5] | — | — | 24,778 | 25,080 | 324,077 |
| Stacey Renfro | — | — | 38,502 | 33,814 | 470,054 |
| **Executive Officers** | | | | | |
| Teresa Orth | 18,012[7] | — | 36,101 | 29,368 | 425,548 |
| Neal Panza | — | — | 10,218 | 11,678 | 142,324 |
| Andrew Laudato | — | — | 25,547 | 29,197 | 355,836 |
| **Directors** | | | | | |
| Alexander W. Smith[6] | — | 14,920 | — | — | 96,980 |
| Deborah M. Derby | — | 39,002 | — | — | 253,513 |
| David H. Edwab | 2,030[7] | 33,120 | — | — | 215,280 |
| Melvin L. Keating | — | 19,893 | — | — | 129,305 |
| Guillermo Marmol | — | 14,920 | — | — | 96,980 |
| Himanshu H. Shah | — | 19,893 | — | — | 129,305 |
| Timothy J. Theriault | — | 14,920 | — | — | 96,980 |
| Sing Wang | — | 14,920 | — | — | 96,980 |

28.     Moreover, if they are terminated in connection with the Proposed Transaction, Vitamin Shoppe's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Name | Cash ($)(6) | Equity ($)(7) | Perquisites/ Benefits ($)(8) | Total ($)(9) |
|---|---|---|---|---|
| Sharon Leite | 3,725,584 | 1,401,368 | 20,271 | 5,147,223 |
| Billy Wafford(1) | — | — | — | — |
| David Mock(2) | — | 899,827 | — | 899,827 |
| David M. Kastin | 1,348,829 | 425,549 | 20,271 | 1,794,649 |
| Colin Watts(3) | — | — | — | — |
| Brenda Galgano(4) | — | — | — | — |
| Alexander Smith(5) | — | 96,980 | — | 96,980 |
| Charles D. Knight | 1,598,828 | 324,077 | 20,271 | 1,943,176 |
| Stacey Renfro | 1,643,924 | 470,054 | 20,271 | 2,134,249 |

**The Proxy Statement Contains Material Misstatements or Omissions**

29.     Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Vitamin Shoppe's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

30.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor BofA Merrill Lynch; (ii) the background of the go-shop process conducted in connection with the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning BofA Merrill Lynch's Financial Analyses*

31.     The Proxy Statement describes BofA Merrill Lynch's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Vitamin Shoppe's public

stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

32. With respect to BofA Merrill Lynch's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 8.50% to 10.50%; (ii) the estimated terminal values for Vitamin Shoppe; (iii) net debt as of June 29, 2019; and (iv) the implied perpetuity growth rates resulting from the analysis.

33. With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by BofA Merrill Lynch, respectively

34. With respect to BofA Merrill Lynch's analysis of price targets for the Company, the Proxy Statement fails to disclose: (i) the individual price targets observed by BofA Merrill Lynch in the analysis; and (ii) the sources thereof.

35. Without such undisclosed information, Vitamin Shoppe stockholders cannot evaluate for themselves whether the financial analyses performed by BofA Merrill Lynch were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which BofA Merrill Lynch's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

36.     The omission of this information renders the statements in the "Opinion of Vitamin Shoppe's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Go-Shop Process***

37.     The Proxy Statement omits material information relating to the go-shop process conducted in connection with the Proposed Transaction.

38.     In connection with the Proposed Transaction, the Company negotiated a go-shop period which commenced following the execution of the Merger Agreement. According to the Proxy Statement, "[d]uring the go-shop period . . . representatives of BofA Merrill Lynch contacted 73 parties, including 11 strategic and 62 financial parties. Four of these parties entered into confidentiality agreements with the Company and were granted access to the electronic data room maintained by the Company." Proxy Statement at 36. Critically, the Proxy Statement fails to expressly indicate whether the confidentiality agreements Vitamin Shoppe entered into with the four parties during the go-shop process (including "Party H," as further discussed below) are still in effect and/or contain "don't ask, don't waive" standstill provisions that are presently precluding these potential buyers from making a topping bid for the Company.

39.     The disclosure of the terms of the confidentiality agreements is crucial to Vitamin Shoppe stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

40.     Moreover, according to the Proxy Statement, on September 5, 2019, during the go-shop process, a strategic party identified in the Proxy Statement as "Party H" submitted a proposal to acquire the Company for $7.25 per share in cash – a $0.75 per share premium to the Merger Consideration. *See id*. On September 20, 2019, Party H's financial advisor informed BofA Merrill

Lynch that Party H was continuing to conduct due diligence and seek committed financing in connection with its proposal.  *See id.* at 37.

41.     The Proxy Statement sets forth that "[o]n September 23, 2019, in light of the failure of Party H to obtain committed financing, the Company determined to cease negotiations with Party H . . . ." *Id.*  The Proxy Statement fails, however, to disclose whether Party H was continuing to seek committed financing as of September 23, whether Party H sought additional time to obtain financing and, if so, the Board's basis for determining to cease negotiations with Party H. Accordingly, Company stockholders are left without the material information necessary to evaluate the competing level of interest that was submitted to Vitamin Shoppe.

42.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

43.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Vitamin Shoppe insiders.

44.     The Proxy Statement sets forth:

> As of the date of this proxy statement, none of Vitamin Shoppe's executive officers have reached an understanding on potential employment or other retention terms with the Surviving Corporation, and no Vitamin Shoppe executive officers have entered into any definitive agreements or arrangements regarding employment or other retention with the Surviving Corporation following the consummation of the Merger. However, prior to the Effective Time, Parent may initiate discussions regarding employment or other retention terms and may enter into definitive agreements regarding employment or retention for certain of Vitamin Shoppe employees, to be effective as of the Effective Time.

*Id.* at 58.  The Proxy Statement fails, however, to disclose the details of any employment and retention-related discussions and negotiations that occurred between Liberty Tax and Vitamin

Shoppe executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of Liberty Tax's prior proposals or indications of interest mentioned management retention or equity participation in the combined company.

45. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46. The omission of this information renders the statements in the "Background of the Merger" and "Interests of the Company's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Vitamin Shoppe's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats all previous allegations as if set forth in full.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisor, the background of the go-shop process, and potential conflicts of interest faced by Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

52. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for Violations of  
Section 20(a) of the Exchange Act**

54. Plaintiff repeats all previous allegations as if set forth in full.

55. The Individual Defendants acted as controlling persons of Vitamin Shoppe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Vitamin Shoppe, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Vitamin Shoppe's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Vitamin Shoppe, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Vitamin Shoppe stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 18, 2019											**WEISSLAW LLP**

By  /s/ Mark D. Smilow
Mark. D. Smilow
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*